[No. B191303. Second Dist., Div. Eight. Oct. 29, 2007.]

RICHARD SEGAL et al., Plaintiffs and Respondents, v.
DAVID SILBERSTEIN et al., Defendants and Appellants.

**COUNSEL**

Rintala, Smoot, Jaenicke & Rees and Michael B. Garfinkel for Defendants and Appellants.

No appearance for Plaintiffs and Respondents.

**OPINION**

**RUBIN, J.**—Defendants David, Sandra, Michael, and Lisa Silberstein appeal from the trial court order denying their petition to compel arbitration of claims raised in Richard Segal's complaint alleging breach of contract and breach of fiduciary duty in connection with the parties' real estate acquisition and development joint venture. Because the operating agreements of the parties' business entities require arbitration, we reverse.

## FACTS AND PROCEDURAL HISTORY

Richard Segal sued David Silberstein, alleging that Silberstein breached their oral joint venture agreement to split the profits from their business. The complaint alleged that pursuant to the joint venture agreement, Segal and Silberstein formed several business entities to buy, develop, and manage real property, including Chapman Summit (Chapman), Double S Development (Double S), BSG Financial (BSG), Sage Village, and Adventure Development. Segal alleged that Silberstein and several companies that were

Silberstein's alter ego tried to hide, divert, fraudulently transfer, and otherwise take control of the assets and profits "of the aforementioned entities."[1]

The complaint's first cause of action was by Segal against Silberstein for breach of their oral joint venture agreement by failing to account for, and by improperly diverting or assuming control over, the assets, income, and profits "of the aforementioned entities." The second cause of action, which incorporated all previous allegations, sought declaratory and injunctive relief as to all defendants.[2] It alleged that Silberstein took the following improper actions: refused to pay back loans made by plaintiffs "to the various entities"; wrongfully transferred assets of jointly owned entities to entities under his control; and wrongly disputed that David Silberstein owes capital contributions to the "jointly-formed entities." Based on those allegations, the complaint sought a judicial determination of the parties' rights "as to the management and operation of the entities, . . . [including] the ownership percentage interest of Plaintiffs and Defendants, and each of them, in each entity listed hereinabove." Such a declaration was necessary, the complaint alleged, because plaintiffs were being denied their proper shares of, and interests in, "the various entities."

The third cause of action named all defendants and sought an accounting for the wrongfully diverted funds and assets previously described. The fourth cause of action was by Segal against Silberstein for constructive fraud and breach of fiduciary duty based on the previous allegations. The seventh cause of action was by Segal against all defendants for a constructive trust due to the allegedly wrongful acquisition by Silberstein's alter ego companies and family members of the assets of the business entities. The 10th cause of action was by Segal against all defendants and asked to set aside the transfers of various assets that Segal alleged were made in order to defraud him and

---

[1] Other plaintiffs were: Texas partnership RJS Realty, Ltd., of which Segal was general partner; RPM Realty, a Nevada limited liability company that was a member and manager of Double S; and Seagrape, Inc., and Spectrum Real Estate Services, both Florida corporations that became member-investors of BSG.

The defendant business entities alleged to have acted as Silberstein's alter ego are DSD Homes, a Texas limited liability company, Syndex, a California limited liability partnership, Syndicate Exchange, a Texas corporation, Adventure Partners, Ltd., a Texas limited partnership, Adventure General, a Texas corporation, and Garden Investments, a Nevada corporation. Other entities named as defendants were the just mentioned BSG and Double S, which are Texas limited liability companies. Also named as defendants were some of Silberstein's family members: Sandra, Michael, and Lisa Silberstein. We will sometimes refer to David Silberstein and his family member defendants as the Silbersteins.

[2] Each succeeding cause of action incorporated all earlier allegations.

other shareholders, investors, or creditors. The remaining eight causes of action are similar, but focus on wrongful conduct as to the assets and profits of defendants BSG, Double S, and Sage Village.

The Silbersteins brought a petition to compel arbitration of the claims raised in Segal's complaint. (Code Civ. Proc., § 1281.2.)[3] The motion was supported by the operating agreements of three of the business entities formed pursuant to the joint venture agreement—Chapman, BSG, and Double S. The three operating agreements were virtually identical. Each called for the formation of a real estate investment entity that required its members to make capital contributions in a designated amount. Profits would be split according to each member's percentage interest in the company, the companies' assets would be held in the name of each company, and accounts and records concerning company business would be maintained.

Each operating agreement contained an arbitration provision. The Chapman arbitration provision said: "Any action to enforce or interpret this Agreement or to resolve disputes between the Members or by or against any Member shall be settled by arbitration in accordance with the rules of the American Arbitration Association. *Arbitration shall be the exclusive dispute resolution process in the State of California, but arbitration shall be a nonexclusive process elsewhere.* Any party may commence arbitration by sending a written demand for arbitration to the other parties. Such demand shall set forth the nature of the matter to be resolved by arbitration. Arbitration shall be conducted at Los Angeles, California. The substantive law of the State of California shall be applied by the arbitrator to the resolution of the dispute. The parties shall share equally all initial costs of arbitration. The prevailing party shall be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration. All decisions of the arbitrator shall be final, binding, and conclusive on all parties. Judgment may be entered upon any such decision in accordance with applicable law in any court having jurisdiction thereof." (Italics added.)

The Double S and BSG arbitration provisions were identical except that they said arbitration was the exclusive dispute resolution process in Texas but not elsewhere, and that Texas law applied to resolving disputes. The Double S provision required a Texas arbitration to be held in San Antonio and the BSG provision required a Texas arbitration to be held in Houston. The Silbersteins argued to the trial court that arbitration was required by those three provisions.

---

[3] All further undesignated section references are to the Code of Civil Procedure.

Segal opposed the petition on the following grounds: (1) because the BSG and Double S agreements specified that arbitration was the exclusive process in Texas only, but was the nonexclusive process elsewhere, that meant arbitration was optional only and not required in California; (2) the Chapman agreement, which made arbitration the exclusive dispute resolution process in California, did not apply because Chapman was not a named party to the action and because the allegations of Segal's complaint did not raise any issues or disputes concerning Chapman; (3) an order compelling arbitration would be improper as to the Chapman agreement because Chapman and Silberstein were defendants in another pending action, raising the specter of conflicting rulings (§ 1281.2, subd. (c)); and (4) Silberstein waived his arbitration rights under the Chapman agreement by appearing in the other pending action instead of petitioning to compel arbitration.[4]

The trial court agreed with Segal and denied the petition to compel arbitration. The Silbersteins have appealed.[5]

## DISCUSSION

### 1. *Applicable Law and Standard of Review*

The BSG and Double S agreements require that those agreements be construed and enforced in accordance with Texas law. Neither party raised the choice of law issue below, however, relying instead on California law. On appeal, Silberstein continues to rely on California law and, as noted earlier, Segal has not filed a respondent's brief on appeal. We therefore deem the issue waived and will apply California law. (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099, fn. 3 [118 Cal.Rptr.2d 862]; cf. *Liberty Mutual Ins. Co. v. Superior Court* (1997) 58 Cal.App.4th 617, 624 [68 Cal.Rptr.2d

---

[4] Segal did not contend below that the arbitration provisions were not at issue because his suit alleged breach only of the oral joint venture agreement entities, an agreement presumably without an arbitration provision. Had he done so, we would most likely reject that contention. To do otherwise would strip the written operating agreements of legal effect merely because they were the product of an underlying oral agreement. We also note that even though the complaint alleges the formation of several business entities pursuant to the joint venture agreement, the operating agreements of only three such entities are in the record. It is unclear whether operating agreements exist for the other entities.

[5] Despite receiving notice from this court, Segal did not file a respondent's brief. As a result, we will decide the appeal on the record, the opening brief, and appellants' oral argument. (Cal. Rules of Court, rule 8.220(a)(2).)

219] [choice-of-law issue not waived where party expressly stated he did not waive the issue and was reserving it].)[6]

■ One party to an arbitration agreement may petition the court to compel other parties to arbitrate a dispute that is covered by their agreement. (§ 1281.2.) Section 1281.2 creates a summary proceeding for determining whether the parties should be ordered to arbitrate. The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. The opposing party must meet the same evidentiary burden to prove facts necessary to its defense. The trial court acts as the trier of fact, weighing all the evidence. Because there is no conflicting evidence regarding the interpretation of the arbitration agreements at issue here, we exercise our independent judgment to determine as a matter of law under the rules of contract interpretation whether those agreements apply.[7] (*Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1030–1031 [23 Cal.Rptr.3d 524].)

■ When interpreting contracts, the language used controls if it is clear and explicit. We must view the language of a contract as a whole, avoiding a piecemeal, strict construction approach. If possible, we should give effect to every provision and avoid rendering any part of an agreement surplusage. Where an agreement is capable of being interpreted in two ways, we should construe it in order to make the agreement " 'lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity. [Citations.]' [Citation.]" (*City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71 [56 Cal.Rptr.2d 723].) ■ Because of California's public policy that generally favors arbitration, we will uphold arbitration unless we can say with assurance that an arbitration clause cannot reasonably be interpreted to cover a dispute or otherwise cannot be enforced. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686 [99 Cal.Rptr.2d 809].)

2. *Arbitration Is Mandatory Under the BSG and Double S Agreements*

Even though the BSG and Double S agreements state that "any action" to enforce or interpret those agreements "shall be settled by arbitration," the trial

---

[6] Regardless, the applicable procedural and substantive law of Texas is nearly identical to California's. (See *Nabors Drilling USA, LP v. Carpenter* (Tex.App. 2006) 198 S.W.3d 240, 246–247, 249.)

[7] The parties offered into evidence only the operating agreements, a promissory note, and the complaint in a pending action against Chapman. There was no evidence concerning the negotiations preceding the operating agreements or the parties' understandings or intentions in regard to the arbitration provisions. Accordingly, the only evidence relating to the interpretation of those provisions is the provisions themselves.

court ruled that arbitration was merely optional in California because the agreements also provided that arbitration "shall be the exclusive dispute resolution process in the State of Texas, but shall be a nonexclusive process elsewhere." We recognize the seeming ambiguity created by referring to arbitration as either an exclusive or nonexclusive dispute resolution process. For the following reasons, however, we do not construe that language to mean that a party to the BSG and Double S operating agreements may resort to civil litigation to enforce or interpret those agreements in states other than Texas.

■ First, the term "action" means a proceeding in a court of law and excludes arbitration, which is considered a substitute for proceedings in court. (§ 22; *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795 [13 Cal.Rptr.2d 678]; *McRae v. Superior Court* (1963) 221 Cal.App.2d 166, 170 [34 Cal.Rptr. 346].)[8]

■ Second, the term "shall" has long been considered mandatory under California's contract interpretation rules. (*Blue Cross of Northern California v. Cory* (1981) 120 Cal.App.3d 723, 734 [174 Cal.Rptr. 901].) Read with this in mind, the provision effectively states that any lawsuit brought to enforce or interpret the operating agreements or resolve disputes between members to those agreements must be arbitrated. Denying Silberstein's petition to compel arbitration, thereby permitting this civil action to proceed, would render this language meaningless.

Third, apart from the "nonexclusive process" language, the entire provision is geared toward the arbitration process and does not appear to provide for civil litigation as a dispute resolution option. For instance, the clause designates the applicable arbitration rules, describes the process for commencing arbitration, states where a Texas arbitration will be held, requires "the arbitrator" to apply Texas law, provides that the parties shall equally share initial arbitration costs, awards the prevailing party its attorney's fees and costs "incurred in connection with the arbitration," states that the arbitrator's decision will be final and binding, and allows entry of judgment on that decision in any court with jurisdiction over the matter. By contrast, after stating that all actions (lawsuits) must be arbitrated, the provision never again mentions civil litigation and says nothing about costs and attorney's fees in the event a civil action were to be brought to enforce or interpret the operating agreements.

Finally, adopting the trial court's interpretation leads to the following absurd results: an action to enforce the operating agreement must be arbitrated in the company's home state, with the prevailing party awarded its

---

[8] Once more, Texas law is similar, with the terms "suit," "action," and "cause of action" interchangeably defined as civil or criminal matters that are contested in a court of law. (*Hatten v. City of Houston* (Tex.Civ.App. 1963) 373 S.W.2d 525, 533–534.)

attorney's fees and costs, but the same dispute may be brought as a civil action in another state, with all the increased costs and delays attendant to litigation, but with no provision for fees and costs to the prevailing party. We can think of no good reason why a business entity or its investors would agree to being sued out of state perhaps thousands of miles away from where they do business, while requiring arbitration in their home state only.[9]

 So what did the parties mean when they referred to arbitration as a nonexclusive dispute resolution process outside of Texas? We believe they were referring to even less costly and time-consuming alternative dispute resolution processes such as mediation and conciliation. Our Legislature has made a similar distinction in establishing a pilot mediation program for civil actions in certain counties. (§§ 1775–1775.15.) The Legislature contrasted "litigation culminating in a trial" with "less formal processes" (§ 1775, subd. (b)), such as "mediation" and similar alternative "dispute resolution" processes (§ 1775, subds. (c), (d)). The Texas courts have made a similar distinction. (See *State v. Fidelity and Deposit of Maryland* (Tex. 2007) 223 S.W.3d 309, 312 [contrasting the "litigation process" with a state-mandated "dispute-resolution process" for state construction contracts].) At least this interpretation produces a result grounded in logic: instead of allowing full-blown civil litigation outside the company's home state, this interpretation mandates arbitration in all states, but allows the parties to consider even less formal and less costly alternative dispute resolution processes when dealing with a dispute outside the home state. Given our state's preference for arbitration, and the concomitant rule that arbitration should be upheld unless it can be said with assurance that an arbitration clause cannot reasonably be interpreted to cover a dispute (*Coast Plaza Doctors Hospital v. Blue Cross of California, supra,* 83 Cal.App.4th at p. 686), we adopt this interpretation and conclude that the trial court erred by denying the petition to compel arbitration as to disputes over the BSG and Double S operating agreements.[10]

---

[9] If the parties truly intended to require arbitration only in Texas, they should have said so expressly, perhaps by having the provision read: "Any action to enforce or interpret this Agreement *in Texas* . . . shall be settled by arbitration. In all other states, arbitration is not required and a civil action may be brought."

[10] At bottom, this is a poorly worded arbitration provision and we suppose it is arguable that there are virtually unlimited devices to resolve disputes, including, theoretically, those founded on chance. We have given the contractual language the interpretation that seems most reasonable to us. Our research reveals that this same arbitration provision has turned up in two unreported California appellate decisions. Although the issue before us was not raised in those cases, it concerns us that such a troubling provision has found its way into use in California.

### 3. The Chapman Agreement Is At Issue and Requires Arbitration

The trial court refused to compel arbitration under the Chapman agreement arbitration clause on the ground Chapman was not a party to Segal's action and the complaint did not include allegations that raised any issues concerning the enforcement or interpretation of that agreement, or any disputes between Chapman's member-investors.[11]

The Chapman operating agreement required that profits be split according to each member's percentage interest in the Chapman company, that Chapman company assets would be held in the name of the company, and that accounts and records concerning company business would be maintained. The complaint named several entities formed pursuant to the Segal-Silberstein joint venture, including Chapman. It alleged that Silberstein, his family members, and his alter ego companies, were improperly taking profits and transferring and hiding assets of the "aforementioned entities." Based on those allegations, Segal sought damages for breach of contract and breach of fiduciary duty, as well as injunctive and declaratory relief as to the parties' rights to the management and operation of "the entities." These allegations clearly involve a dispute between Chapman's member-investors over the interpretation and enforcement of their operating agreement. It is unclear to us why Chapman itself must be named as a defendant to invoke the terms of the arbitration provision based on allegations that Silberstein, aided by others, violated the terms of the Chapman agreement. We therefore hold that the trial court erred.

Finally, Segal contended below that Silberstein waived his rights under the Chapman arbitration provision by appearing in another pending action against him (§ 1281.5, subd. (c)), and that arbitration had to be rejected because that other pending action posed a risk of conflicting rulings on common issues of law or fact. (§ 1281.2, subd. (c).) The complaint in that other action was included with Segal's opposition papers below. It involves an action for breach of a promissory note and other related claims by one of Chapman's creditors against Silberstein and Chapman. The plaintiffs in that other action do not allege that they are (and they do not appear to be) member-investors of Chapman, and that action therefore involves wholly separate issues that do not fall within the terms of the arbitration provision. The trial court also erred to the extent it denied Silberstein's petition to compel arbitration on that basis.

---

[11] Although our interpretation of the exclusive versus nonexclusive process language applies with equal force to the Chapman agreement, that issue did not motivate the trial court's refusal to order arbitration under the Chapman provision. Instead, the trial court found that the Chapman agreement was not at issue in Segal's complaint.

## DISPOSITION

For the reasons set forth above, the order denying Silberstein's petition to compel arbitration is reversed and the trial court is directed to enter a new and different order granting that petition. Appellants to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.