Filed 1/8/14  Bryan Cave v. National Quality Care CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRYAN CAVE LLP, | B248777 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS142283) |
| v. | |
| NATIONAL QUALITY CARE, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Ronald M. Sohigian, Judge.  Affirmed.

Dickstein Shapiro, James H. Turken and Christopher Kadish for Defendants and Appellants.

Bryan Cave, John W. Amberg, Sharon Z. Weiss and Rosario L. Vizzie for Plaintiff and Respondent.

* * * * * *

The trial court confirmed an arbitration award requiring defendants and appellants National Quality Care, Inc. (NQCI) and Sorbotech, LLC to pay attorney fees to plaintiff and respondent Bryan Cave LLP.  The trial court rejected appellants' argument that the award should not be confirmed because the arbitrator selected by Bryan Cave had represented the firm in a different proceeding.  We affirm.  The arbitrator that Bryan Cave chose for the three-arbitrator panel was not subject to the disclosure requirements for neutral arbitrators.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, Bryan Cave entered into a written agreement with appellant NQCI for the provision of legal services in connection with an arbitration proceeding with Xcorporeal, Inc.  In October 2009, Bryan Cave entered into another written agreement with appellant Sorbotech, LLC to provide legal services in connection with its formation and other matters (collectively Agreements).

In addition to outlining the terms of Bryan Cave's engagement and its billing practices, the Agreements contained an arbitration clause that provided:  "Arbitration of Dispute.  By signing and returning the engagement letter, you agree that should any dispute arise out of or relate to this agreement, our relationship, any billing statements forwarded to you, or our services, including but not limited to any alleged claims for legal malpractice, breach of fiduciary duty, breach of contract or other claim against the Firm for any alleged inadequacy of such services, all such disputes will be settled by arbitration.  The arbitration shall be heard in the County of Los Angeles by a panel of three arbitrators, all of whom must be practicing attorneys in that county, with one arbitrator to be selected by each party and the third to be chosen by the two arbitrators selected by the parties.  The arbitrators may establish such rules for the conduct of the arbitration as they may choose, except that there shall be no discovery and any proceedings conducted shall be private and confidential and shall not be disclosed to the public by either the arbitrators or the parties to the arbitration.  The award of the arbitrators must be by a majority vote and shall be final and binding, not subject to challenge by either party in any court of law.  Each party shall bear its own costs of the

arbitration and shall pay one-half of the costs of the proceedings." Appellants' authorized representatives signed the Agreements.

Pursuant to the Agreements, Bryan Cave provided legal services to appellants between 2006 and 2010. By 2010, a significant portion of Bryan Cave's fees remained unpaid. Bryan Cave prevailed in a non-binding, statutory fee arbitration conducted pursuant to Business and Professions Code section 6200 et seq. before a three-member panel appointed by the Los Angeles County Bar Association. Thereafter, in February 2011, appellants served their demands for binding arbitration under the terms of the Agreements. Bryan Cave, in turn, submitted claims for breach of contract and account stated, and NQCI added a counterclaim for legal malpractice.

In accordance with the process specified in the Agreements' arbitration clause concerning the formation of a three-member arbitration panel, Bryan Cave selected arbitrator David B. Parker; appellants selected George P. Schiavelli; and Parker and Schiavelli selected Robert B. Ericson and appointed him to chair the panel. In April 2011, the parties participated in a telephonic scheduling conference before the arbitration panel that resulted in Scheduling Order # 1. In part, the Scheduling Order provided that the matter was being arbitrated pursuant to the arbitration clause in the Agreements and characterized the panel as consisting of "party arbitrators" Parker and Schiavelli, and "neutral arbitrator" Ericson. Under the heading "Applicable Rules," the Scheduling Order further provided: "The parties agree that the JAMS Comprehensive Arbitration Rules and Procedures ('JAMS Rules'), effective October 1, 2010, shall apply to address procedural issues not covered by this scheduling order ('Order'). Provided, however, that this Order and the parties' arbitration agreement shall supersede the JAMS Rules to the extent of any conflict, including in particular Rules 17 ('Exchange of Information'), 18 ('Summary Disposition of a Claim or Issue') and 20 ('Pre-Hearing Submissions') insofar as the latter requires a short description of the anticipated testimony of percipient witnesses and an estimate of length of the witness' testimony. The parties agree that Rule 22 of the JAMS Rules shall apply to address the admissibility of evidence."

A four-day arbitration was conducted during August and September 2011, during which the parties presented witnesses and introduced exhibits, and the parties filed closing briefs in October and November 2011. In May 2012, appellants sent a letter to the arbitration panel advising that they had discovered that arbitrator Parker was representing Bryan Cave in another matter during the pendency of the arbitration. Bryan Cave responded that because Parker was a party arbitrator, he owed no duty to disclose his relationship with the firm. In May 2012, the arbitration panel asked for supplemental briefing on the difference between party arbitrators and neutral arbitrators; the law applicable to disclosures required of party arbitrators; and the applicability of Rule 7 of the JAMS Comprehensive Rules to this matter. After the parties submitted the requested briefing, the panel considered the issue and determined that no action was required.

Thereafter, in March 2013 the arbitrators issued a written award, finding in favor of Bryan Cave on its breach of contract claim and against NQCI on its malpractice claim. The award required NQCI to pay Bryan Cave $2,029,924.06, and Sorbotech to pay $79,943.93; both awards included prejudgment interest. Arbitrator Schiavelli dissented.

Byran Cave filed a petition to confirm the arbitration award in March 2013. Appellants responded to and opposed the petition, arguing the arbitration award should be vacated because of Parker's failure to disclose his representation. Following a hearing, the trial court issued an order in April 2013 confirming the award and entering judgment.

This appeal followed.

## DISCUSSION

Appellants maintain the trial court erred in confirming the arbitration award because of Parker's failure to disclose his relationship with Bryan Cave. "'On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues.' [Citation.]" (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217.) More specifically, "[w]e apply the de novo standard of review

4

to issues concerning arbitrator disclosure. [Citation.]" (*Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1362.)

Judicial review of an arbitration award is limited to "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 12.) Code of Civil Procedure section 1286.2, part of the California Arbitration Act (Arbitration Act) (Code Civ. Proc., § 1280 et seq.), specifies the grounds for vacation of an arbitration award and includes the arbitrator's failure to timely disclose a ground for disqualification of which the arbitrator was then aware.[1] (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381.) In turn, section 1281.9, subdivision (a) requires a proposed neutral arbitrator to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including "[a]ny attorney-client relationship the proposed neutral arbitrator has or had with any party or lawyer for a party to the arbitration proceeding." (§ 1281.9, subd. (a)(5).) Similarly, section 1281.9, subdivision (a)(2) requires disclosure by a proposed neutral arbitrator of "[a]ny matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter." Now part of the California Rules of Court, the Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards) likewise require an arbitrator to disclose in writing "[a]ny attorney-client relationship the arbitrator has or has had with a party or lawyer for a party." (Ethics Stds., std. 7(d)(7).)

The law distinguishes between neutral arbitrators and party arbitrators. By statute, a "[n]eutral arbitrator" as one "who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the

---

[1]    Code of Civil Procedure section 1286.2, subdivision (a)(6) provides as a ground for setting aside an award: "An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." Unless otherwise indicated, all further statutory citations are to the Code of Civil Procedure.

arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them." (§ 1280, subd. (d); see *Haworth v. Superior Court, supra,* 50 Cal.4th at p. 381, fn. 4.) The Ethics Standards contain a similar definition: "'Arbitrator' and 'neutral arbitrator' [as used in these standards] mean any arbitrator who is subject to these standards and who is to serve impartially, whether selected or appointed: [¶] (A) Jointly by the parties or by the arbitrators selected by the parties; [¶] (B) By the court, when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them; or [¶] (C) By a dispute resolution provider organization, under an agreement of the parties." (Ethics Stds., std. 2(a)(1).) In contrast, the Ethics Standards define a "'[p]arty-arbitrator'" as "an arbitrator selected unilaterally by a party." (Ethics Stds., std. 2(q).) As explained in *Good v. Kaiser Foundation Hospital* (1984) 152 Cal.App.3d 819, 822, 823, "party-appointed arbitrators are rarely 'neutral'" and "party-appointed arbitrators are not expected to be neutral . . . ."

Relevant here, the disclosure requirements for neutral arbitrators differ from those for party arbitrators. Section 1281.9 and the Ethics Standards' requirements apply only to neutral arbitrators—not party arbitrators. (*Jevne v. Superior Court* (2005) 35 Cal.4th 935, 945, fn. 4 ["The [Ethics] Standards do not apply to 'party arbitrators' (defined as an arbitrator selected unilaterally by a party)"]; *Mahnke v. Superior Court* (2009) 180 Cal.App.4th 565, 577 ["[t]he disclosure requirements in section 1281.9 and the Judicial Council's ethics standards for neutral arbitrators do not apply to any arbitrator other than the jointly selected, or court-appointed, proposed neutral arbitrator"]; *Jakks Pacific, Inc. v. Superior Court* (2008) 160 Cal.App.4th 596, 605 ["[t]he Standards apply only to neutral arbitrators selected by the parties or a dispute resolution services provider, or appointed by the court to serve impartially [citation], and do not apply to party arbitrators [citation]"]; Ethics Stds., std. 3(b)(1) ["These standards do not apply to . . . [p]arty arbitrators, as defined in these standards"].)

In *Tate v. Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 852–853, disapproved on other grounds in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376–377, the court described the differing role of neutral arbitrators and

party arbitrators on a tripartite arbitration panel: "'"'When a tripartite arbitration board is appointed, it is usually composed of a representative of each of the contending parties and a third arbitrator chosen by the other two or by some other pre-determined procedure. The third arbitrator, who is the neutral arbitrator, often acts as the chairman of the board. In this type of arbitration only the neutral arbitrator is an impartial party and an arbitrator in the usual sense. . . .'" [¶] Courts have repeatedly upheld agreements for arbitration conducted by party-chosen, nonneutral arbitrators, particularly when a neutral arbitrator is also involved. [Citations.] These cases implicitly recognize it is not necessarily unfair or unconscionable to create an effectively neutral tribunal by building in presumably offsetting biases." (*Tate v. Saratoga Savings & Loan Assn., supra,* at p. 852; accord, *Tipton v. Systron Donner Corp.* (1979) 99 Cal.App.3d 501, 506 ["A special relationship between the non-neutral arbitrator and his client is implicit in the nature of the tripartite format here freely adopted by the parties"].) For this reason, "bias in a party arbitrator is expected and furnishes no ground for vacating an arbitration award, unless it amounts to 'corruption.' [Citation.]" (*Tate v. Saratoga Savings & Loan Assn., supra,* at p. 858.)

Here, the Agreements provided for arbitration by a tripartite arbitration panel, with each party unilaterally selecting one arbitrator and the two arbitrators jointly selecting the third. Under these circumstances, Parker, as a party arbitrator, owed no duty to disclose his relationship with Bryan Cave under the Arbitration Act or the Ethics Standards. Appellants' reliance on *Gray v. Chiu, supra,* 212 Cal.App.4th 1355, is misplaced, as that case involved the application of the Arbitration Act's and the Ethical Standards' disclosure requirements to the neutral arbitrator on a tripartite panel. Finding that the arbitrator should have disclosed that he and one of the attorneys were members of the same dispute resolution service, the court explained: "The California Supreme Court has termed the requirement of a *neutral* arbitrator 'essential to ensuring the integrity of the arbitration process.' [Citation.] The '"[Statutory] [d]uties of disclosure and disqualification are designed to ensure an arbitrator's impartiality." [Citation.]' [Citation.]" (*Id.* at p. 1365, italics added.)

We are not persuaded that either the JAMS Comprehensive Arbitration Rules and Procedures (JAMS Rules) or the JAMS Arbitrators Ethics Guidelines (JAMS Guidelines) imposed a disclosure requirement on Parker.[2]  According to the JAMS Guidelines, "[a]n Arbitrator should promptly disclose, or cause to be disclosed all matters required by applicable law and any actual or potential conflict of interest or relationship or other information, of which the Arbitrator is aware, that reasonably could lead a Party to question the Arbitrator's impartiality."  (JAMS Guidelines, Art. V(A).)  Unlike the Arbitration Act and the Ethics Standards, which distinguish between neutral arbitrators and party arbitrators according to their means of appointment, the JAMS Guidelines' introduction notes that "[m]any arbitration agreements provide for the appointment of an Arbitrator by each Party and the appointment of the third Arbitrator by the two Party-appointed Arbitrators.  Party-appointed Arbitrators should be presumed to be neutral, unless the parties' agreement, the arbitration rules agreed to by the parties or applicable laws provide otherwise."  (JAMS Guidelines, Intro., par. G)  The JAMS Rules are in accord, providing that "[w]here the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party unless the Parties have agreed that they shall be non-neutral."  (JAMS Rules, rule 7(c).)  Under the JAMS Guidelines, even a "non-neutral Arbitrator is obligated to make disclosures of any actual or potential conflicts of interest, although a non-neutral Arbitrator is not obligated to withdraw if requested to do so only by the party who did not appoint him or her."  (JAMS Guidelines, Art. X.)

Appellant argues that the Agreements, together with the later Scheduling Order, must be construed to require the parties' and the arbitrators' compliance with the JAMS Rules and JAMS Guidelines.  In construing an arbitration agreement, we apply general principles of contract law.  (*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153.)  Where, as here, the language of

---

[2]    The JAMS Rules and JAMS Guidelines may be found at http://www.jamsadr.com/rules-comprehensive-arbitration/ and http://www.jamsadr.com/arbitrators-ethics/, respectively.

the arbitration provision is not in dispute, we review the trial court's decision de novo. (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.) Our goal in construing the Agreements is to give effect to the parties' mutual intent. (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 501.) To the extent possible, we ascertain the parties' intent from the contractual language alone, focusing on the usual and ordinary meaning of the words used. (Civ. Code, § 1639; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) "'If contractual language is clear and explicit, it governs.'" (*Boghos v. Certain Underwriters at Lloyd's of London, supra,* at p. 501.) We view the language as a whole, giving effect to every part to avoid rendering any part of the agreement surplusage. (*Segal v. Silberstein* (2007) 156 Cal.App.4th 627, 633.)

The Agreements did not state that any arbitration was to be governed by the JAMS Rules or the JAMS Guidelines. Rather, with two exceptions not relevant here, the Agreements provided that "[t]he arbitrators may establish such rules for the conduct of the arbitration as they may choose . . . ." Consistent with that directive, the parties and the arbitration panel agreed in the Scheduling Order "that the JAMS Comprehensive Arbitration Rules and Procedures ('JAMS Rules'), effective October 1, 2010, shall apply to address procedural issues not covered by this scheduling order ('Order')." The Scheduling Order further provided "however, that this Order and the parties' arbitration agreement shall supersede the JAMS Rules to the extent of any conflict," and specified certain procedural provisions intended to be superseded. Appellant argues that the Scheduling Order's reference to the JAMS Rules must be construed as the parties' and the arbitrators' assent to be governed by the disclosure provisions of the JAMS Rules and JAMS Guidelines.

We disagree. Nothing in the language of either the Agreements or the Scheduling Order reflects an intent to apply the disclosure provisions in the JAMS Rules and JAMS Guidelines in lieu of the disclosure provisions set forth in the Arbitration Act and the Ethics Standards. The same Scheduling Order that provided procedural issues not otherwise covered would be governed by the JAMS Rules also characterized Parker and

9

Schiavelli as "party arbitrators" and Ericson as the "neutral arbitrator." The Scheduling Order therefore "covered" the roles of the arbitrators and, correspondingly, the legal duties of disclosure that arose from those distinct roles. Alternatively, the Scheduling Order's specification of Parker as a party arbitrator overcame the presumption in the JAMS Rules and JAMS Guidelines that he was a neutral arbitrator. Thus, even if the JAMS Rules and JAMS Guidelines applied to him as a non-neutral arbitrator, he was not required to withdraw for the failure to disclose conflict of interest. (JAMS Guidelines, Art. X.) Accordingly, we find no basis to disturb the trial court's order confirming the arbitration award.

## DISPOSITION

The order confirming the arbitration award is affirmed. Bryan Cave is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *

FERNS

We concur:



_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10