Filed 4/28/14  Shih v. Lin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TERESA S. SHIH, | |
| Plaintiff and Respondent, | G048378 |
| v. | (Super. Ct. No. 30-2011-00513664) |
| LI HWAN LIN et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Francisco F. Firmat, Judge.  Affirmed.

Kaufman Dolowich & Voluck, Vincent S. Green, Joel T. Shackelford and Ki'Jhana R. Friday for Defendants and Appellants.

Law Offices of David Baxter Norris and David B. Norris for Plaintiff and Respondent.

\*          \*          \*

Plaintiff and respondent Teresa S. Shih obtained a $2.4 million summary judgment against defendants and appellants Li Hwan "Bernice" Lin and SBL Professional Realty, Inc.  The judgment results from a short-term loan plaintiff made to defendants in connection with a real estate development project undertaken by defendants.  Defendants contend the trial court incorrectly interpreted the contract that is the basis for the judgment and denied their motion for judgment on the pleadings.  Finding no error we affirm.

## FACTS AND PROCEDURAL HISTORY

In October 2009 defendants entered into a "Collaboration Agreement" (Agreement) with plaintiff and her husband, Comet K. Shih, who is now deceased.  The Agreement recited defendants were obtaining a $10 million loan (Loan) to develop a real estate project (Project) in Vietnam.  Defendants needed a deposit to secure the Loan, and plaintiff and her husband agreed to provide $1 million to defendants to be used as a "Cash Deposit" for a "security instrument" for the Loan.

Plaintiff and her husband borrowed $985,000 and provided $15,000 of their own funds to pay $1 million to defendants pursuant to the Agreement.  The Agreement provided defendants would pay plaintiff 4 percent per annum on the $15,000 contribution until the $1 million was repaid.

Defendants agreed to "return" $1 million to plaintiff "upon funding of the" Loan, or, "[i]f the funding of the . . . Loan is not approved by the lender for any reason," defendants agreed to "return" $1 million to plaintiff "and all obligation[s] of this Agreement [were to] become null and void."  The Agreement stated, "The estimated time for Payback [*sic*] shall not exceed 90 days from execution of this Agreement."  When the Loan was funded, defendants were to give plaintiff a 3 percent ownership in the project.

Defendants were to obtain the loan from Sterling Mortgage Group and its related entity, International Trust and Finance Company, and defendants sent half of

2

plaintiff's loan proceeds to each company. Defendants never obtained the $10 million loan. And they never repaid plaintiff the $1 million.

Plaintiff filed suit against defendants. The operative pleading is the first amended complaint, alleging breach of the Agreement and declaratory relief, seeking damages for defendants' failure to repay the $1 million. Subsequently, plaintiff timely filed a motion for summary judgment.

Before that motion was heard, defendants filed a motion for judgment on the pleadings, less than 30 days before its scheduled hearing date. In support of that motion defendants filed a request for judicial notice of the motion for summary judgment and the opposition thereto.

The court denied the motion for judgment on the pleadings on the grounds it was "procedurally flawed" because it was "a speaking motion that should be treated as a motion for summary judgment."

The court granted plaintiff's motion for summary judgment, finding the Agreement "unambiguous and enforceable" and requiring defendants to repay the $1 million within 90 days. In making this ruling, the court sustained all of plaintiff's objections to specific portions of the declarations filed by defendants in opposition to the motion.

## DISCUSSION

*1. Defendants' Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings is essentially the same as a demurrer. It lies for lack of jurisdiction or where a cause of action fails to allege sufficient facts to constitute a cause of action. (Code Civ. Proc., § 438, subd. (c).) The grounds must be evident from the face of the complaint or from facts that may be the subject of judicial notice. (*Caldera Pharmaceuticals, Inc. v. Regents of University of California* (2012) 205 Cal.App.4th 338, 350.)

3

But a motion for judgment on the pleadings may not be based on declarations or other extrinsic evidence.  (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1063.)  Therefore, the court properly excluded the declarations and other documents that were the subject of defendants' request for judicial notice.  If defendants wanted to rely on declarations and other extrinsic evidence, they needed to file a motion for summary judgment.  In this instance, the court could not treat the motion for judgment on the pleadings as a motion for summary judgment because it did not comply with the filing requirements, having been filed less than 30 days before the date set for hearing.  (Code Civ. Proc., § 437c, subd. (a) [motion for summary judgment must be served at least 75 days before hearing date].)  Thus, there was no basis on which to grant defendants' motion for judgment on the pleadings.

2.  *Plaintiff's Motion for Summary Judgment*

Defendants claim that, in granting plaintiff's motion for summary judgment, the court misinterpreted the Agreement.  First, they contend, the court improperly construed the provision as to the time when defendants had to repay the $1 million to plaintiff, i.e., that payment was due within 90 days at the latest.  The provision states:  "The estimated time for Payback [*sic*] shall not exceed 90 days from execution of this Agreement."  Defendants argue nothing in the Agreement "required" them to repay the $1 million within 90 days.

Defendants cite the dictionary definition of "'estimate'" as "'a rough or approximate calculation'" and conclude therefrom that the provision in question means the time of repayment was an estimate only and not a "'guarantee'" of repayment.  They claim the court's interpretation ignored "the parties' apparent intent to approximate the time for payback [*sic*] by the very inclusion of the term 'estimate.'"

Defendants also point out the parties "mutually dickered the terms" of the Agreement and would have no reason to include the word "'estimate[d]'" if the intent

was to "firmly limit" the outside date for payment as 90 days after the date of the Agreement.

We review the meaning of the Agreement de novo. (*Reilly v. Inquest Technology, Inc.* (2013) 218 Cal.App.4th 536, 554; *Reilly*.) We must determine the mutual and objective intent of the parties at the time the Agreement was made. (Civ. Code, § 1636; *Reilly*, at p. 554.) To do so we rely first on the language of the contract, giving the words their usual and ordinary meaning. (Civ. Code, §§ 1639, 1644; *Reilly*, at p. 555.) Each part of the contract must be interpreted with reference to the entire agreement. (*Reilly*, at p. 555.) "Construction cannot lead to unfair or absurd results but must be reasonable and fair. [Citation.]" (*California National Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 143.)

Defendants' reading of the 90-day provision violates the tenets of contract interpretation. They contend the Agreement states the parties merely "estimated" (bold, underscoring, and italics omitted) repayment would be within 90 days of the execution of the Agreement but made no guarantee it would be paid within 90 days, or ever. But in focusing completely on the term "estimated," defendants ignore the words "'shall not exceed.'"

We must interpret the Agreement to give effect to every word and not render any to be surplusage. (*Queen Villas Homeowners Assn. v. TCB Property Management* (2007) 149 Cal.App.4th 1, 9.) If we construe the Agreement as defendants would have us, the term "'shall not exceed'" is rendered virtually meaningless. If there was no firm time for repayment, there would be no need to include "'shall not exceed 90 days.'"

Moreover, "the term 'shall' has long been considered mandatory under California's contract interpretation rules. [Citation.]" (*Segal v. Silberstein* (2007) 156 Cal.App.4th 627, 634.) Thus, repayment had to be made no later than 90 days after the date the Agreement was signed.

As to defendants' contention the parties would not have included the word "estimated" if they were requiring payment within 90 days, we are not persuaded. When reading the Agreement in its entirety, it makes perfect sense. The Agreement explains defendants are borrowing $10 million. Plaintiff's $1 million was to be used as a deposit to obtain the Loan. It is plain the parties anticipated the Loan would be procured within approximately 90 days and plaintiff would then be repaid. Thus, the word "estimated." Estimated, in the Agreement, means plaintiff might be repaid within a shorter period than 90 days but not a longer period. Ninety days was the outside limit.

Defendants' second argument is related to the first. They claim both approval and funding of the Loan are conditions precedent to return of the $1 million to plaintiff. They maintain that although there was approval, the Loan never funded so no repayment was ever due.

They rely on two provisions of the Agreement. First, defendants agreed to repay the $1 million to plaintiff "upon funding of the . . . Loan." Second, "[i]f the funding of the . . . Loan is not approved by the lender for any reason," defendants will repay the $1 million. Defendants argue that the only way plaintiff is entitled to repayment is if the Loan was not approved or if the Loan is funded. They claim the Loan has been approved but not funded so no repayment is due.

This is not what the language of the Agreement means. It is clear from the Agreement that plaintiff agreed to make a very short-term loan of $1 million to defendants to assist them in procuring the Loan. As discussed above, the parties expected the Loan to be approved or disapproved within 90 days at the outside because plaintiff was to be repaid within that time. Defendants agreed to repay plaintiff "upon funding of the . . . Loan."

Defendants also agreed to repay plaintiff "[i]f the funding of the . . . Loan is not approved." Here, funding was not approved; there has been no funding. If we interpret the Agreement in the manner defendants contend, plaintiff was in jeopardy of

6

never being repaid if the Loan was approved but never funded. There is nothing in the Agreement to even suggest plaintiff's funds were to be at risk.

Finally, contrary to defendants' third argument, plaintiff made a loan, not an investment. Defendants argue that, notwithstanding their first two arguments, they nonetheless are not required to repay plaintiff because the Agreement created not a debtor-creditor relationship but an investment relationship between the parties. Put another way, plaintiff's $1 million payment was an investment funding a partnership or joint venture with defendants.

Defendants proffer several reasons in support of this claim: The Agreement never refers to the $1 million as a loan, despite the court's statement to the contrary in the ruling on the motions, but calls it a "Cash Deposit." Further, defendants point out no note secured repayment of the $1 million. Finally, the Agreement states that when the Loan is funded, plaintiff would be given a 3 percent ownership in the Project.[1]

Defendants' argument has no merit. As discussed above, it is clear from the Agreement plaintiff was lending the money to defendants to secure the Loan. There is no need for the Agreement to specifically call it a "loan." The trial court's comment the Agreement referred to the $1 million as a loan has no bearing on our decision. And no separate promissory note was needed. The Agreement served as a promise for repayment. Most importantly, a 90-day period for repayment is not consistent with an investment, despite the provision for a 3 percent ownership.

In sum, plaintiff met her burden to make a prima facie case for her claim seeking repayment, so the burden shifted and defendants failed to show a triable issue of material fact.

---

[1] Defendants also argue Comet was "eager" to invest in the Project, plaintiff was a sophisticated business person, and Comet never sought repayment of the $1 million. But the court sustained plaintiff's objections to all these statements in defendants' declarations and there is no evidence in the record to support these claims.

7

## DISPOSITION

The judgment is affirmed.  Plaintiff is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


FYBEL, ACTING P. J.


IKOLA, J.